J-A09004-15

2015 PA Super 263

| | |
|---|---|
| LYNN J. HANAWAY AND CONNIE HANAWAY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| THE PARKESBURG GROUP, LP; PARKE MANSION PARTNERS, LP; SADSBURY ASSOCIATES, LP; PARKE MANSION, LLC; AND T.R. WHITE, INC., | |
| Appellees | No. 2564 EDA 2014 |

Appeal from the Judgment entered August 14, 2014,
Court of Common Pleas, Chester County,
Civil Division at No. 2011-01522

BEFORE: BOWES, DONOHUE and STABILE, JJ.

CONCURRING AND DISSENTING OPINION BY DONOHUE, J.:
**FILED DECEMBER 15, 2015**

I agree with the learned Majority's determinations with respect to the first four issues raised by Appellants on appeal. I respectfully dissent from the Majority's decision on Appellants' fifth issue on appeal, as I disagree that an implied covenant of good faith and fair dealing provides the Appellants with a cause of action for breach of contract in this case. The two limited partnership agreements at issue here gave the general partner, T.R. White, Inc. ("TRW"), "full, exclusive and complete discretion" over the management and control of Sadsbury Associates, L.P. ("SA") and The Parkesburg Group, L.P. ("TPG"). The Appellants contend that TRW did not exercise this discretion in good faith, and thus, they should be entitled to sue for breach

of contract.  Acknowledging that this case presents "a novel question under Pennsylvania law," the Majority recommends that we adopt Delaware law on this issue and hold that TRW breached implied covenants of good faith and fair dealing the SA and TPG limited partnership agreements.  Maj. Op. at 22-27.

I disagree for three reasons.  First, the decision to adopt Delaware law is unwarranted in this circumstance, as there is an important difference between the statutes governing limited partnerships in the two states.  Second, even if a duty of good faith and fair dealing may be implied in Pennsylvania limited partnership agreements, this is not a proper case in which to do so.  The SA and TPG limited partnership agreements exhaustively set forth the applicable restrictions on TRW's management discretion, leaving no room (or need) for implied contractual terms.  Finally, Appellants had available remedies sounding in both contract and tort, but chose not to litigate the breach of contract claim pled in their complaint and failed to file their complaint in time to preserve their tort claims.  This Court should not recognize a new cause of action merely because the Appellants failed to prosecute the tort and contract claims available to them in response to TRW's alleged conduct.

Pennsylvania appellate courts have recognized an implied duty of good faith and fair dealing only in contracts regulating certain types of legal relationships.  ***Cable & Associates Ins. Agency, Inc. v. Commercial Nat.***

*Bank of Pennsylvania*, 875 A.2d 361, 364 (Pa. Super. 2005). While this Court has recognized an implied duty of good faith and fair dealing in contracts between franchisors and their franchisees and between insurers and their insureds, no such duty exists in contracts between lenders and borrowers. *Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank and Trust*, 560 A.2d 151, 153-54 (citing *Atlantic Richfield Co. v. Razumic*, 390 A.2d 736 (Pa. 1978), *Loos & Dilworth v. Quaker State Oil Refining Corp.*, 500 A.2d 1155 (Pa. Super. 1985), *Gray v. Nationwide Mutual Ins. Co.*, 223 A.2d 8 (Pa. 1966), *Gedeon v. State Farm Ins. Co.*, 188 A.2d 320 (Pa. 1963), and *Heights v. Citizens National Bank*, 342 A.2d 738 (Pa. 1975)); *see also Heritage Surveyors & Engineers, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. 2002). The Pennsylvania Legislature has required recognition of a duty of good faith and fair dealing in just one context - commercial contracts. 13 Pa.C.S.A. § 1304. A duty of good faith and fair dealing exists in every commercial contract, and the legislature has deemed this duty so important that the parties to the contract are prohibited from varying or limiting its obligations. 13 Pa.C.S.A. § 1302(b).

Neither the Pennsylvania Legislature nor any Pennsylvania appellate court has ever addressed whether an implied duty of good faith and fair dealing exists in limited partnership agreements. As a result, the Majority directs us to two decisions from the Supreme Court of Delaware, *Winshall*

*v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013), and ***Gerber v. Enter. Products Holdings, LLC***, 67 A.3d 400, 419 (Del. 2013) (overruled on other grounds in ***Winshall***). In these two cases, the Delaware court held that an implied covenant of good faith and fair dealing exists in every Delaware limited partnership agreement. ***Winshall***, 76 A.3d at 1260; ***Gerber***, 67 A.3d at 419. This implied covenant affords limited partners "contractual protections 'they failed to secure for themselves at the bargaining table,'" and "seeks to enforce the parties' contractual bargain by implying only those terms that the parties would have agreed to during their original negotiations if they had thought to address them." ***Winshall***, 76 A.3d at 1260; ***Gerber***, 67 A.3d at 419. When confronted with a claim for breach of an implied covenant of good faith and fair dealing, Delaware courts must therefore determine whether the general partner exercised its management discretion "reasonably," or if instead the general partner frustrated the "reasonable expectations" of the limited partners by denying them the fruits of their contractual bargain. Maj. Op. at 25.

Limited partnerships are creatures of the legislature. ***Northampton Vly. Constr. v. Horne-Lang Assoc.***, 456 A.2d 1077, 1078 (Pa. Super. 1983). While a limited partnership agreement is a contract, it is a unique form of contract in that its terms must conform to the statutory structure for limited partnerships established by the state legislature. To form a limited partnership in Delaware, the terms of the limited partnership agreement

must conform to the legislative directives of the Delaware Revised Uniform Limited Partnership Act ("DRULPA"), 6 Del. C. §§ 17-101 - 1111, whereas the governing statute in Pennsylvania is the Pennsylvania Revised Uniform Limited Partnership Act ("PRULPA"), 15 Pa.C.S.A. §§ 8501 - 8594. The rights, duties, and liabilities of the partners in a limited partnership formed in these states are governed, first and foremost, by these legislative acts.

With respect to implied covenants of good faith and fair dealing, the DRULPA and the PRULPA contain an important difference. Each state adopted its own version of the Revised Uniform Limited Partnership Act of 1976, Delaware in 1982 and Pennsylvania in 1988. The 1976 uniform act contained no reference to a implied duty of good faith and fair dealing, and thus, at the times of enactment, neither the DRUPLA nor the PRUPLA did either.[1] In 2001, a new uniform act (the Uniform Limited Partnership Act of 2001) was published, which for the first time included provisions indicating that partners to a limited partnership agreement owe each other an implied duty of good faith and fair dealing. *See* UNIF. LTD. PART. ACT §§ 305(b), 408(d), 110(b)(7) (2001). Neither Delaware nor Pennsylvania adopted the

---

[1] Since their enactments, the DRULPA and the PRULPA have contained one unrelated reference to "good faith," specifically, a provision permitting the general partner to keep certain types of information (e.g., trade secrets) confidential from the limited partners if the general partner believes, in good faith, that disclosure could damage the limited partnership. 6 Del. C. § 17-305(b); 15 Pa.C.S.A. § 8525(b). This provision was not patterned after any section in the 1976 uniform legislation. Pennsylvania patterned its provision after Delaware's section 17-305(b). 15 Pa.C.S.A. § 8525(b) *Source Note-1988*.

2001 uniform legislation in toto, but in 2004 the Delaware legislature

amended the DRULPA to add three new provisions, codified at 6 Del. C. §17-

1101(d)−(f),[2] that expressly recognize that a general partner in a Delaware

---

[2]  § **17**-**1101**. Construction and application of chapter and partnership agreement

* * *

(d) To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's duties may be expanded or restricted or eliminated by provisions in the partnership agreement; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

(e) Unless otherwise provided in a partnership agreement, a partner or other person shall not be liable to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement for breach of fiduciary duty for the partner's or other person's good faith reliance on the provisions of the partnership agreement.

(f) A partnership agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a partner or other person to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement; provided, that a partnership agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

limited partnership owes the limited partners an implied duty of good faith and fair dealing. 6 Del. C. § 17-1101(d)–(f). These provisions further specify that while the partners may, if they so choose when drafting their limited partnership agreement, modify or remove a general partner's liability for a breach of fiduciary duty, they may **not**, in any circumstance, "limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing." 6 Del. C. § 17-1101(f).

The Pennsylvania Legislature has never similarly amended the PRULPA to recognize an implied duty of good faith and fair dealing in Pennsylvania limited partnership agreements, and the PRULPA has no counterparts to sections 17-1101(d)-(f) in the DRULPA. Instead, quite to the contrary, under the PRULPA the parties have essentially unlimited freedom of contract to regulate their own internal affairs:

**§ 8520.** Partnership agreement

\*    \*    \*

> **(d) Freedom of contract.--**A written partnership agreement may contain any provision for the regulation of the internal affairs of the limited partnership agreed to by the partners, whether or not specifically authorized by or in contravention of this chapter….

---

6 Del. C. § 17-1101(d)-(f).

15 Pa.C.S.A. § 8520(d).[3] While general partners in Pennsylvania owe fiduciary duties to the limited partners, 15 Pa.C.S.A. §§ 8520, 8533, 8504, 8334, under section 8520(d) presumably the partners could eliminate even these obligations in the limited partnership agreement.

For these reasons, I cannot agree with the Majority's decision to adopt Delaware law on this issue. In a Delaware limited partnership, when a general partner exercises its discretion in management decisions, the Delaware legislature mandates that it do so, in all instances and without exception, subject to an implied covenant of good faith and fair dealing. In significant contrast, there has been no like mandate by the Pennsylvania Legislature, which has placed no similar restriction on a general partner's exercise of its discretion. Instead, pursuant to section 8520(d), the parties to a Pennsylvania limited partnership agreement may establish their own unique limitations on the general partner's conduct (or choose not to limit it at all).

In the present case, pursuant to section 8520(d), the parties to the SA and TPG limited partnership agreements (including the Appellants) thoroughly described both the nature of TRW's management powers and the corresponding restrictions on those powers. In identical language in both agreements, section 6.2 provides TRW with "full, exclusive and complete

---

[3] The provision lists two exceptions to this general rule, but neither has any application to this case.

discretion in the management and control of the business of the Partnership," and section 6.5.1 further authorizes TRW, at its "sole and absolute discretion," to cause SA and/or TPG to enter into "any contract, amendment, supplement or other document relating to the Business." Motion for Partial Summary Judgment, 2/7/2011, Exhibits 4 and 5. Section 6.2 requires TRW to exercise its powers in a manner that is "consistent with the Business of the Partnership," and sections 2.1 and 2.2 define the "Business of the Partnership" to be real estate investment and development. *Id.* Finally, section 6.9 provides that TRW may not be held liable "in damages or otherwise" to the limited partnership or to any limited partner, "unless such act or failure to act is attributable to willful misconduct, gross negligence, fraud or an intentional violation of any term of this Agreement." *Id.*

Pennsylvania courts will not imply terms inconsistent with the express terms adopted by the parties to the contract. *See, e.g.*, *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 388 (Pa. 1986) (A court may "not imply a different contract than that which the parties have expressly adopted."); *John B. Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 706-07 (Pa. Super. 2003) ("[U]nequivocal contractual terms hold a position superior to any implied by courts, leaving implied covenants to serve as gap filler."); *Greek v. Wylie*, 109 A. 529, 530 (Pa. 1920) ("[T]here can be no

implied covenants as to any matter specifically covered by the written terms of the contract itself.").

The Appellants offer no reason why we should imply a "reasonableness" requirement of good faith into the SA and TPG limited partnership agreements, since the express language of these contracts set forth the particular limitations on TRW's discretion in managing the business of SA and TPG. TRW had an express contractual obligation to exercise its management functions "consistent with the Business of the Partnership," namely, to take all actions necessary to invest in and develop the real estate held by the limited partnerships, with an intentional violation of this obligation constituting an actionable breach of contract.

The Appellants' "reasonable expectations" of TRW need not be implied into the SA and TPG limited partnership agreements, as the parties' own contractual language specified that TRW's obligation was to invest in and develop real estate to generate profits and/or capital appreciation for the limited partners. So long as TRW's actions remained consistent with this goal, it had "full, exclusive and complete discretion" in making its management decisions. An intentional failure to direct its efforts "consistent with the Business of the Partnership," however, subjected TRW to possible civil liability for breach of contract. Instantly, there is no room (or need) to add gap-fillers or to imply any terms "the parties would have agreed to during their original negotiations if they had thought to address them,"

*Winshall*, 76 A.3d at 1260. At the outset, the parties here (including the Appellants) addressed both the limited partners' "reasonable expectations" for TRW's conduct as well as TRW's potential liability for an intentional violation of those expectations.

The Appellants well understood this. In the first count (Breach of Contract) of their Complaint, the Appellants did not allege that TRW violated any implied duties of good faith. Rather, the Appellants pled that TRW breached its contractual obligations to carry out its duties consistently with the "Business of the Partnership," i.e., to develop the real estate held by TPG and SA and, in so doing, to generate "profits and/or capital appreciation" for the limited partners. Complaint, 2/11/2011, ¶¶ 64-69. Specifically, the Appellants alleged:

> 67. The actions of TRW as described above in transferring the Davis Tract and the Loue Tract to PMP for less than adequate consideration and using the funds of [SA] for PMP to acquire these properties, constitute a deliberate and intentional breach of the contractual obligation of TPG and SA to pay [Appellants] their respective share of the profits and/or capital appreciation in the value of the assets of both these Partnerships, all in violation of the TPG and SA Agreements.
>
> 68. TRW, TPG and [SA] have failed and refused and continue to fail and refuse to pay [Appellants] the full profits they should receive from the sale of the real estate and/or the townhouses to be constructed thereon, or in the alternative, the value of the appreciation in the assets of TPG or the full value of the monies transferred from [SA].

***Id.*** ¶¶ 67-68.

For reasons unclear from the certified record on appeal, the Appellants abandoned their claim that TRW breached the express terms of the limited partnership agreements, as in their response to the motion for summary judgment, the Appellants argued only that TRW breached an implied duty of good faith and fair dealing. Moreover, the Appellants asserted various tort claims, including breach of fiduciary duty and conversion, for the same allegedly wrongful conduct that underlies their claim for breach contract. Complaint, 2/11/2011, ¶¶ 70-77. As explained in the portion of the Majority opinion with which I join, the Appellants did not preserve these causes of action through the timely filing of their Complaint. Maj. Op. at 6-14. We should not recognize a new cause of action (breach of an implied covenant of good faith and fair dealing in a limited partnership agreement) merely because the Appellants failed to prosecute the tort and contract claims available to them in response to TRW's alleged conduct.

For these reasons, I would affirm the trial court's August 14, 2014 order in its entirety, and I thus dissent from the Majority's opinion to the extent that it fails to do so.