533 A.2d 822

E. D. Bickford, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

B. D. Broeker, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

A. W. Connar, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

L. Fenninger, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

L. W. Foy, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

C. W. Ganzel, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

E. P. Leach, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

E. F. Martin, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

J. J. O'Connell, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

A. M. Reed, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

S. J. Shale, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

I. D. Sims, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

C. T. Stott, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

J. H. Walker, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued September 14, 1987, before Judge CRAIG, and Senior Judges BARBIERI and KALISH, sitting as a panel of three.

*Ralph A. Gerra,* for petitioners.

*Robert P. Coyne,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, November 23, 1987:

Fourteen taxpayers,[1] former key employees of Bethlehem Steel Corporation, appeal the order of the Board of Finance and Revenue, denying their petitions for refunds of Pennsylvania personal income taxes paid in the years 1980 through 1983.

The following findings of fact, by this court, are drawn from the parties' stipulation of facts. In 1959, the

---

[1] Fourteen taxpayers filed appeals from the decision of the Board of Finance and Revenue at numbers 3414-3496 C.D. 1984. Because the issue raised in each appeal was identical, the cases were consolidated by order of this court on March 10, 1987.

shareholders of the corporation amended the articles of incorporation to provide an incentive program for employee-directors. This program, the Special Incentive Compensation Plan (SICP), provided that every year the employee-directors would each receive "dividend units", to be calculated in proportion to their compensation. Each dividend unit entitled the employee-director to receive the cash value of each cash dividend paid on one share of common stock of the corporation. The SICP also provided that payments on the dividend units accumulated by the employee would continue for the life of the employee, and in any event for fifteen years after the termination of employment.[2]

However, the SICP also mandated that payments would be discontinued if the service of the employee-director was terminated for any reason other than death, retirement pursuant to the company's pension plan or voluntary termination of service with the consent of the company. The payments would also be discontinued whenever the board of directors found that an employee-director willfully engaged in activities harmful to the interests of the corporation.

The SICP was amended in 1964, 1975 and 1981. The amendments of 1964 and 1975 expanded the eligibility for the plan to include those designated by the board of directors as "important employees". The amendment of 1981 terminated the incentive plan.

The key employee taxpayers received unit dividends as either employee-directors or as "important employees". During their active service with the corporation the taxpayers received SICP payments.

By 1980, all the taxpayers had terminated their employment pursuant to the corporation's pension plan.

---

[2] The SICP provided that if an individual died, his estate would be entitled to payments for at least fifteen years after his termination from employment.

Following their retirement, the taxpayers received SICP payments. Both the corporation and the taxpayers treated these payments as taxable income for the purpose of both federal and state tax returns, during active service and after the retirements.

Taxpayers filed petitions for refunds with the Board of Finance and Revenue for the years 1980-1983 inclusive. In those petitions, the Taxpayers contended, as they do in this appeal, that the post-termination SICP payments were old age or retirement benefits, as contemplated by Section 301(d) of the Pennsylvania Tax Reform Code of 1971,[3] and therefore were not compensation subject to personal income tax under Section 303(a)(1) of the Tax Reform Code of 1971, 72 P.S. §7303(a)(1).

Because we conclude that the post-termination SICP payments do not constitute retirement benefits but rather taxable compensation, we must affirm the decision of the Board of Finance and Revenue.

The Tax Reform Code imposes a personal income tax on the receipt of certain classes of income. One of these classes is compensation:

(a)    The classes of income referred to above are as follows:

(1)    **Compensation.** All salaries, wages, commissions, bonuses and incentive payments whether based on profits or otherwise, fees, tips and similar remuneration for services rendered whether directly or through an agent and whether in cash or property. . . .

Section 303(a)(1), 72 P.S. §7303(a)(1).

Section 301(d) of the Tax Reform Code of 1971, 72 P.S. §7301(d), defines compensation in the same terms and adds:

---

[3] The Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7301(d).

The term 'compensation' shall not mean or include . . . (iii) payments commonly recognized as old age or retirement benefits paid to persons retired from service after reaching a specific age or after a stated period of employment; . . . .

Departmental regulations also provide a consistent definition of what constitutes compensation for the purposes of the personal income tax:

(a) Compensation includes items of remuneration received by an employer directly or through an agent, in cash or in property. . . . Such items shall include salaries, wages, commissions bonuses, stock options, incentive payments, fees, tips, termination or severance payments, rewards, vacation or holiday pay, tax assumed by the employer, and all other remuneration received for services rendered.

. . . .

(c) Compensation shall not mean or include any of the following:

. . . .

(3) Payments commonly recognized as old age or retirement benefits paid to persons retired from service after reaching a specified age or after a stated period of employment. Retirement pay includes a distribution of a lump sum upon retirment, but shall not include a severance payment by an employer to an employee who terminates employment without retiring. A payment of the latter type shall be considered compensation, if paid upon termination of employment, rather than as retirement income, to the extent that the payment exceeds the employe's contribution to any plan out of which such payment may be made.

61 Pa. Code §101.6.

To support the view that the post-termination SICP payments are old age or retirement payments, the taxpayers first contend that, because they became entitled to the post-termination SICP payments by retiring pursuant to the corporation pension plan, these payments are old age or retirement benefits. Secondly the taxpayers contend that post-termination SICP payments should be afforded the same treatment as payments under profit-sharing or stock bonus plans created pursuant to §401(k) of the Internal Revenue Code[4] which were determined, by a Chief Counsel Memorandum,[5] to be old-age or retirement payments.

Although the taxpayers did become entitled to the post-termination SICP payments as a result of their retirement pursuant to the corporation's pension plan, this fact alone is not enough to qualify those payments as old age or retirement benefits.

The SICP allows payments not only after termination of employment for death or disability, or retirement under the corporation's pension plan, but also after *voluntary termination with the consent of the corporation.* Thus, the SICP provides means of obtaining entitlement to post-termination payments, other than by retirement. As stated in Section 301(d) of the Tax Reform Code, payments which are not compensation are those which are "commonly recognized as old age or retirement benefits paid persons retired from service after reaching a specific age or after a stated period of employment." 72 P.S. §7301(d). Thus, although the taxpayers' entitlement to post-termination payments arose from their retirement under the pension plan, because retirement after reaching a specific age or after a stated

---

[4] 26 U.S.C. §401(k).

[5] Chief Counsel Memorandum of December 30, 1982, CCH Pennsylvania Tax Reports, ¶ 201-528.

number of years of service is not a prerequisite to the receipt of SICP post-termination payments, these payments cannot be considered to be old age or retirement benefits as defined in Section 301(d) of the Tax Reform Code.

Nor should these payments be treated the same as those made pursuant to a 401(k) plan. In 1982, the Chief Counsel of the Department of Revenue issued a memorandum regarding the treatment of deferred income from 401(k) profit sharing plans under the Tax Reform Code. The chief counsel's memorandum stated that post-retirement payments pursuant to 401(k) profit sharing plans constitute old age or retirement benefits for the purposes of section 301(d) of the Tax Reform Code. The chief counsel based the ruling on the fact that "the primary purpose of such plans is to provide retirement income to participants and not merely to defer compensation to a later date." CCH Pennsylvania Tax Reports, ¶ 201-528.

The stated purpose of the SICP payments, unlike payments made under 401(k) plans, was not to provide retirement income. The specific purpose for establishing the SICP, as stated in the amended articles of incorporation, was to "provide an incentive to increased and profitable management." Moreover, the plan provided for, and the taxpayers received, payments during their employment with the corporation. The fact that the taxpayers received SICP payments while still employed by the corporation is further evidence that the purpose of the SICP was not to provide retirement income. Therefore, SICP post-termination payments, in contrast to 401(k) payments, cannot be considered old age or retirement benefits. The post-termination SICP payments must be considered compensation for past profitable management which become payable whenever the corporation declares a cash dividend.

Finally, the SICP appears to be more like an incentive plan for stock bonuses than an old age or retirement plan. Although the taxpayers did not receive an actual share of stock, they received the right to a cash payment on the unit dividends each time the corporation paid a cash dividend. Therefore, although the taxpayers did not receive any capital in the corporation that would normally be associated with owning stock, they did receive the right to cash payments whenever the corporation declared a cash dividend for its stockholders. In effect, the taxpayers received income expectation similar to those of a stockholder in that they are entitled to a cash payment each time the shareholders receive cash dividends. If the taxpayers had received full shares of stock they could not allege that the payment of a cash dividend on those shares of stock was retirement benefits. Thus, because the SICP gave the taxpayers income rights more like those of shareholders than those of pensioners, post-termination payments on the unit dividends cannot be considered old age or retirement benefits.

Therefore, the post-termination SICP payments are compensation as contemplated by the legislature in Sections 301 and 303 of the Tax Reform Code.

Accordingly, we affirm the determination of the Board of Finance and Revenue.

## ORDER

Now, November 23, 1987, unless exceptions are filed within 30 days as provided by Pa. R.A.P. 1571(i), the orders of the Board of Finance and Revenue at Nos. CT 5485 through CT 5540, dated November 2, 1984, are affirmed.